# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0268, <u>State of New Hampshire v. Samuel Marino</u>, the court on February 24, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Samuel Marino, appeals an order of the Superior Court (<u>Honigberg</u>, J.) denying his motion for a new trial on grounds of ineffective assistance of counsel. We affirm.

## I. Background

The following facts are supported by the record. Marino and the victim's father were long-time friends, and Marino and the victim had a "close, almost familial" relationship. During the relevant time period, the victim was eleven years old, and her parents were separated and going through a divorce. The victim divided her time between her parents' residences.

The victim had a phone, which her parents frequently monitored. According to Marino's Verizon phone records, Marino and the victim communicated via texts in March and early April 2018. On April 25, 2018, the victim and her father had dinner with Marino and his wife at Marino's home. The victim's father and Marino's wife both testified that they did not see anything unusual that evening. However, the victim testified that during the evening Marino kept trying to get close to her, and at one point asked if she wanted to go upstairs with him.

In the days after the dinner party, Marino began messaging the victim via Snapchat from the user account "blenderrodrigo." Police identified this account as Marino's by linking Snapchat records to Marino's Verizon cell phone number. According to those records, over the next three days, Marino sent the victim 27 images and three videos. In that same time frame, the victim sent Marino 32 photos. The content of most of these messages, images, and videos are no longer available due to Snapchat's "autodelete" functionality.

The victim testified that although the messages were "normal" at first, Marino began to ask her about "intimate details" including how she felt about him. She further testified that Marino sent her photos of his body, both while he was wearing clothes and while he was not. She testified that these photos

included at least one photograph of Marino's genitals, which the victim received while at her mother's home. The victim recognized Marino in at least some of the inappropriate photographs. The victim also testified that shortly after sending the inappropriate messages, Marino invited her over to his house via Snapchat. She understood him to be asking her to go without her parents.

While the victim's mother was going through the victim's phone on April 28, 2018, the victim received a Snapchat message from Marino asking the victim whether she had "naughty thoughts" about him. This message prompted the victim's mother to ask the victim what had been going on with Marino, and to report Marino's behavior to the victim's father and the police. Detectives from the local police department conducted an investigation. The victim was interviewed at the Child Advocacy Center (CAC) a few days after her mother made her initial report to police.

During the investigation, police reviewed the Snapchat application on the victim's phone. Police also obtained Marino's Verizon records, as well as Snapchat records for both Marino and the victim. Notably, no forensic analysis or extraction of the victim's cell phone was ever conducted by police, despite officers having access to and permission to search her phone. It is undisputed that such an analysis would have recovered communications that took place between Marino and the victim outside of Snapchat, and may have recovered any actual screenshots taken of Snapchat messages.

Marino was ultimately charged with two felonies: one count of indecent exposure and one count of certain uses of computer services prohibited. See RSA 645:1 (2016); RSA 649-B:4 (2016). The trial court conducted a two-day bench trial in 2019. The State called six witnesses: the victim's mother and father, the victim, two detectives from the local police department, and the director of the victim assistance program at the local county attorney's office. The State also entered six exhibits into evidence.

Exhibit 2 was a graphic prepared by the State to summarize the content of the Snapchat messages between Marino and the victim. Specifically, Exhibit 2 claimed to show "Screen Shots from 4/28/2018" between two Snapchat accounts. The exhibit depicted Marino as saying: "Do you dream about me?," "Or rather do you have dreams about me," and "And has that ever [led] to naughty thoughts about me?" The exhibit did not contain actual screenshots of messages. Defense counsel did not object to Exhibit 2 being admitted or otherwise challenge the authenticity of the Snapchat evidence it purported to summarize.

Defense counsel focused on the victim's credibility and tendency to "embellish" stories, as well as inconsistencies between her CAC interview, her statements to prosecutors, and her testimony at trial. Defense counsel called

2

Marino's wife and a former friend of the victim's mother as witnesses, and submitted no further exhibits. Counsel also cross-examined both detectives about their investigative choices, and one detective about the failure to do a forensic analysis of the victim's phone.

The trial court found Marino guilty on both counts. Specifically, the trial court found that Marino sent the victim, an eleven-year-old, photos of his genitals while she was at her mother's home, in violation of RSA 645:1, II(a). Further, the trial court found that Marino solicited the victim to come to his residence for the purpose of having sexual relations with her, in violation of RSA 649-B:4.

Marino then retained new counsel and moved, prior to sentencing, for a new trial based on constitutionally ineffective assistance of counsel. Marino also retained a digital forensics expert who analyzed the evidence and record and furnished a report of his findings. The trial court held a hearing on the motion, at which this expert testified. Marino argued that his trial counsel was constitutionally ineffective because counsel (1) failed to educate himself on the nature of the digital evidence or failed to consult with an expert, and (2) failed to challenge the "screenshot" evidence, particularly Exhibit 2, and the State's forensic investigation as a whole. The State argued that trial counsel's defense strategy was objectively reasonable in light of the evidence available to him and, with that strategy, no expert consultation was needed. Without conceding the point, the State also argued that even if trial counsel's performance was deficient, it did not prejudice the outcome of Marino's case.

The trial court denied Marino's motion for a new trial. In its order, the trial court "assum[ed] for purposes of this decision that counsel's performance fell below the objective constitutional standard of reasonableness," but found that trial counsel's "failure to adequately educate and/or to consult an expert, and his resulting failure to challenge the State's screenshot evidence, does not call into question or 'undermine confidence in the outcome' of the trial." The trial court reasoned that the State "established every element of both offenses through the testimony of the victim, whom the Court found credible." The trial court concluded that Marino was not prejudiced. This appeal followed.

II. Analysis

The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. To demonstrate a violation of this right, the defendant must show that his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. State v. Marden, 172 N.H. 258, 262 (2019). To prevail upon a claim of ineffective assistance of counsel, the defendant must demonstrate,

first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. Id. A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective. State v. Collins, 166 N.H. 210, 212 (2014). We first address Marino's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Because we agree with the trial court that Marino failed to establish the prejudice prong, we need not consider the performance prong. To satisfy the prejudice prong, the defendant must demonstrate actual prejudice by showing that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. State v. Wilbur, 171 N.H. 445, 449 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The prejudice analysis considers the totality of the evidence presented at trial. Id. The prejudice prong inquiry is a mixed question of law and fact. Collins, 166 N.H. at 213. Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or erroneous as a matter of law, and we review the ultimate determination of whether the prong is met de novo. Id.

Marino argues that trial counsel's "deficient performance prejudiced the outcome in this case" because "Snapchat and its functionality was the centerpiece of the State's case as they believed that it: 1) corroborated the complaining witness's account; 2) bolstered other witness accounts; and 3) explained away all of the missing evidence." The State argues otherwise, emphasizing that "[t]he trial court determined that the victim offered credible testimony at trial regarding the charged conduct, despite her cross-examination and the lack of digital evidence corroborating her testimony."

The trial court determined that even if trial counsel "could have successfully impeached the testimony of [the victim's] mother and excluded or discredited entirely the 'screenshot' evidence," the trial court still could not "find that trial counsel's failure made a difference in the outcome of the case." The trial court found that the State "established every element of both offenses through the testimony of [the victim], whom the Court found credible."

Our review of the record supports the trial court's determination that each element of both offenses can be proven based on the victim's testimony. First, to prove that Marino was guilty of indecent exposure, the State had to show that (1) Marino (2) purposely (3) transmitted an image of his genitals (4) to a child less than sixteen years of age. See RSA 645:1, II(c). The victim testified that Marino sent her a photo, using Snapchat, of the front of his body

4

without his clothes on "[m]ore than once," and that at least one photo showed his genitals. The victim further testified that she knew it was Marino in the photos because she recognized his face in them. The victim testified that she was eleven years old when she received the photos.

Next, to prove that Marino was guilty of certain uses of computer services prohibited, the State had to show that (1) Marino (2) knowingly (3) used a computer online or internet service (4) to "seduce, solicit, lure, or entice" (5) a child under 13 years of age (6) to commit an offense under RSA chapter 632-A. See RSA 649-B:4, I(a), II(a). As stated, the victim testified that she was eleven years old when these communications occurred. The victim testified that Marino invited her, using Snapchat, to come over to his house "a short time after" he sent her the photos without his clothes on. When the State asked whether it was her understanding that Marino wanted her to come over with or without her parents, she testified: "Without, I think." When the State asked whether Marino said anything about why he wanted her to come over, she testified: "No, not that I recall, no."

In its order, the trial court explained that "[t]he Court, sitting as fact-finder in this case and viewing the totality of the evidence, found that circumstantial evidence proved Defendant's purpose in extending this invitation was to have sexual relations with [the victim] at his residence." We have previously determined that "[c]ircumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt" and that "the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." State v. Germain, 165 N.H. 350, 355 (2013), modified on other grounds by State v. King, 168 N.H. 340, 345 (2015) (quotations omitted).

We agree with the trial court's assessment that "neither the conduct nor the messages described by the mother formed the basis of Defendant's charges." Rather, each element of the charged conduct was proven through the victim's testimony, as shown above. Moreover, the testimony described above does not rely on Exhibit 2. We also note that despite the repeated challenges to the victim's credibility on cross examination, the trial court still found her testimony credible. "The trial court is in a better position than we to assess the credibility of witnesses." State v. Ford, 144 N.H. 57, 62 (1999); see also Strickland v. Washington, 466 U.S. 668, 695 (1984) ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."). Under these circumstances, we find no reason in the record to reverse the trial court's assessment of the victim's credibility. Thus, we agree that Marino has failed to establish prejudice. See Wilbur, 171 N.H. at 449.

5

Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, State v. Fitzgerald, 173 N.H. 564, 584 (2020), we reach the same result under the Federal Constitution as we do under the State Constitution. Accordingly, we conclude that the trial court did not err in denying Marino's motion for a new trial.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred; HANTZ MARCONI, J., dissented.

**Timothy A. Gudas,
Clerk**

HANTZ MARCONI, J., dissenting. In my view, trial counsel's failure to challenge Exhibit 2 fell below an objective standard of reasonableness and was, therefore, constitutionally deficient. See N.H. CONST. pt. I, art. 15; see also State v. Collins, 166 N.H. 210, 212 (2014). Although we accord a high degree of deference to the strategic decisions of trial counsel, this failure went beyond merely "pursuing one viable defense over another viable defense" and instead allowed unauthenticated evidence to be entered as a full exhibit. State v. Brown, 160 N.H. 408, 415 (2010); see also Collins, 166 N.H. at 212-13.

The authenticity of the messages summarized in Exhibit 2 is called into question by, among other things, Snapchat's vanity names, which allow the user receiving messages to change the other user's name in the receiving user's phone. As emphasized by the trial court, "left unexplored at trial was the possibility that the vanity name 'Sam!!' was assigned to a Snapchat account other than the 'blenderrodrigo' account belonging to Defendant, and that another user had sent the messages contained in Exhibit 2." The trial court noted that "[t]his oversight is particularly troublesome given the inculpatory nature of the 'naughty thoughts' message, which was admitted as an exhibit without objection from trial counsel." I agree.

New Hampshire Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." While "[t]he bar for authentication of evidence is not particularly high," messages can be authenticated when "the State's proffered authentication evidence contain[s] sufficient identifying details to link the authorship of the messages to the defendant." State v. Palermo, 168 N.H. 387, 392-93 (2015) (regarding the authentication of Facebook messages) (quotation omitted). Given the summarized nature of the exhibit, the failure to extract the

6

messages from the victim's phone, as well as the complications with Snapchat's vanity names, trial counsel acted unreasonably by failing to challenge this significant evidence. Thus, under the circumstances of this case and evaluated from the perspective of when the deficient performance occurred, trial counsel's failure to challenge Exhibit 2 fell below an objective standard of reasonableness. See Collins, 166 N.H. at 212. This prong is therefore met.

Further, I disagree with the majority's conclusion that the defendant "failed to establish prejudice." To establish prejudice, the defendant must show that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. State v. Wilbur, 171 N.H. 445, 449 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The prejudice analysis considers the totality of the evidence presented at trial. Id.

Here, the trial judge found no prejudice because the State established "every element of both offenses through the testimony of the victim" However, as the defendant points out, the victim's testimony left gaps in the evidence, which were filled by the unobjected-to exhibit. Thus, I believe that trial counsel's performance did prejudice the defendant.

The majority points out that circumstantial evidence, reasonable inferences drawn therefrom, and inferences drawn from facts established as a result of other inferences, may support a finding of guilt beyond a reasonable doubt. However, here, while the trial court relies on circumstantial evidence within the victim's testimony to prove the elements of both counts, such evidence is intertwined with, and influenced by, the Snapchat evidence, particularly Exhibit 2. For example, during the direct examination of the victim, the State briefly mentioned Exhibit 2 in the midst of a line of questioning about the defendant inviting the victim over to his house "without" her parents, raising the implication that the defendant invited her over to his house because of her "naughty thoughts." Specifically, the State asked:

> Q  Do you remember any other inappropriate [S]napchat chat messages, so kind of like the text messages that we haven't already talked about?
>
> A  Not that I recall, no.

Counsel for the State approached the witness and continued:

> Q  I'm going to show you what's been marked as State's Exhibit 2. Do you recognize these messages?
>
> A  (Inaudible response)
>
> Q  Is that a yes?

7

A Yeah.

Q And were those [S]napchat messages between you and [defendant]?

A Yes.

Q When — do you remember [the defendant] inviting you to come over, did he say anything about why he wanted you to come over?

A No, not that I recall.

In addition, during its closing argument, the State said:

> The Defendant wants you to believe that [the victim] lied. . . . The problem with this theory is that it's not supported by the forensic evidence that we do have. There are so many cases where the State is relying on the word of a victim only. This is not one of those cases. This is a case where we have forensic evidence to support what [the victim] testified to.

In <u>Wilbur</u>, we found that prejudice existed where "the prosecutor's comments [including in closing arguments] highlighted evidence that was erroneously admitted by virtue of defense counsel's deficient performance, which cut directly to the essential issue at trial – credibility." <u>Wilbur</u>, 171 N.H. at 456. We reasoned that defense counsel's errors allowed "the State to bolster the child's credibility" and concluded that because credibility was a "central issue in the case," there is "a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided." <u>Id</u>. at 457.

The same reasoning applies under these circumstances. Here, the trial centered upon the credibility of the victim. The State used Exhibit 2 not only to bolster the victim's credibility on the stand and during closing argument, thereby undermining trial counsel's strategy of attacking the victim's credibility, but also to raise inferences that were not testified to by the victim or other witnesses. In particular, the evidence supporting the "enticement" charge was the victim's testimony that the defendant invited her to his house shortly after exchanging a number of photographs, some inappropriate, others not, only some of which she recognized as the defendant, and her impression that the invitation might be "without" her parents. Without the "naughty thoughts" messages in Exhibit 2, such testimony about an invitation from a family friend would not carry the necessary criminal purpose. It is not clear to me that the unchallenged electronic evidence did not influence the lens for viewing the victim's credibility and the plausibility of the events described. Thus, in my view, the pervasive link between the victim's credibility, the State's

burden of proof, and the content of Exhibit 2 suggests a reasonable probability that the outcome would have been different absent the introduction of the erroneously admitted exhibit.  <u>Id</u>. at 449.

Accordingly, I would conclude that the trial court erred in denying the defendant's motion for a new trial based on ineffective assistance of counsel and would reverse the denial of the motion for new trial.